[No. 6,579.—Department One.]

## W. C. SHELDON *v.* G. W. GUNN.

INTERVENTION—DISMISSAL.—An intervenor against whom no relief is prayed can dismiss his complaint in intervention; and this right is not affected by the fact that one of the plaintiffs in the action has died, and his successor in interest has not been brought in as a party.

APPEAL by the intervenors Thomas L. Acock, Charles W. Pierce, John Richards, James A. Elder, A. G. Rhodes, administrator of the estate of John P. Rhodes, deceased, Charles J. Jenkins and Emma S. Lowe, successors in interest of Marinda Otis, deceased, from a judgment in the Sixth District Court for the County of Sacramento. REED, J.

After the decision in Department, the respondent filed his petition that the appeal be reheard in Bank, and the application was denied.

*A. P. Catlin,* and *S. M. Wilson,* for Appellant.

The intervenors were not parties to the action after January 3rd, 1877. They were plaintiffs against both the other parties, and had an absolute statutory right to dismiss their interventions on their own motions, as there were no counter-claims, but denials only, interposed by way of answers to their complaints. (Code Civ. Proc. § 581.) And such right exists at any time before the final submission of the case. (*Brown* v. *Harter,* 18 Cal. 76; *Hancock Ditch Company* v. *Bradford,* 13 id. 637.)

The order of dismissal was not void, because one of the plaintiffs had died in 1875, and her representatives had not been submitted. The act of dismissal is the act of the party himself, and he is not required to give any notice to the adverse party. (Code Civ. Proc. § 581.)

*H. O. Beatty, A. C. Freeman,* and *J. W. Armstrong,* for Respondents; John T. Carey, Respondent in proper person.

The order of dismissal was void because of the death of one of the plaintiffs, prior to its entry, and there being no person to represent her on the record. (*Ewald* v. *Corbett,* 32 Cal. 493;

*McCreery* v. *Everding*, 44 id. 286 ; *Sanchez* v. *Roach*, 5 id. 248 ;
*Judson* v. *Love*, 35 id. 463 ; *Shartzer* v. *Love*, 40 id. 93.) The
order is an entirety, and being void as to one of the joint plaint-
iffs, it is void as to the other. (*Shuford* v. *Cain*, 1 Abb. U. S.
309, 310 ; *Buffum* v. *Ramsdell*, 55 Me. 252 ; *Holbrook* v.
*Murray*, 5 Wend. 161 ; *Hall* v. *Williams*, 6 Pick. 246 ; *Far-
rell* v. *Calkins*, 10 Barb. 348 ; *Richards* v. *Walton*, 12 John.
434 ; *Arnold* v. *Sandford*, 14 id. 423–425 ; *Stearns* v. *Aguirre*,
6 Cal. 180 ; *Jenning* v. *Ashley*, 5 Pike, 132.) The appellants
having "intervened *in the action*," by leave of the Court to re-
sist the claim of the plaintiffs, they became defendants in the
action, as to the plaintiff. (*Horn* v. *Volcano Water Company*,
13 Cal. 70, 71.)

MORRISON, C. J.:

Plaintiffs filed their complaint in the late District Court of
the Sixth Judicial District, to have a trust declared, and to
compel a conveyance of the legal title to certain lands situate
in the county of Sacramento.

The material averments of the complaint are, that, on or
about the 8th day of January, 1844, the Mexican Government
in California, by one Manuel Micheltorrena, the then governor
of California, granted to Jared Sheldon the land in controversy ;
and the said Sheldon having departed this life, the defendants
became his administrators, and as such filed a petition with the
board of land commissioners appointed under the Act of Con-
gress approved March 3rd, 1851, to ascertain and settle titles
to private land claims in California ; that the said board of land
commissioners, after proper and regular proceedings had for
that purpose, rendered a decree on the 10th day of October,
1854, confirming the title to said land, which decree was finally
approved by the Supreme Court of the United States ; and
afterwards, to wit, on or about the 1st day of July, 1870, a
patent was duly made and issued by the Government of the
United States to the defendants, conveying to them the legal
title to the lands described in the complaint. It is further
alleged, that the plaintiffs are the children and sole heirs of
Jared Sheldon, and the prayer is, " that it may be adjudged

and decreed that the defendants now hold, and have held, the legal title to the tract of land above described, under said patent, in trust for the plaintiffs, and that they may be compelled to execute a conveyance thereof to plaintiffs."

The defendants made no answer, and on the 17th day of November, 1871, a decree was duly entered against them, in conformity with the prayer of the complaint; but this decree expressly reserved from its operation all the lands claimed by intervenors.

In November, 1871, petitions of intervention were filed by the appellants, in which they claimed, each for himself, a portion of the land described in the complaint, of which he was then possessed, under and by virtue of conveyances alleged to have been made to them by the administrator of the estate of Jared Sheldon; and praying that it might be adjudged and decreed that the defendants held such parcels of land in trust for them, the intervenors, respectively.

On the 23rd day of November, 1871, plaintiffs moved the Court to strike out said petitions of intervention, which motion was denied by the Court. The plaintiffs thereupon interposed a demurrer to each of said petitions, and the same was overruled on the 11th day of July, 1873. The plaintiffs then filed an answer to each of said petitions, denying all the allegations therein contained, except the allegation of possession by the intervenors of the tracts of land held by them respectively. On the 3rd day of January, 1877, the following order was entered in the case:

" W. C. Sheldon et al. v. G. W. Gunn et al. Now, on this day, on motion of A. P. Catlin, attorney for Thomas L. Acock, Charles W. Pierce, John Richards, J. A. Elder, and Marinda Oatis, and the administrator of the estate of John P. Rhodes, deceased, intervenors, ordered that the interventions of said intervenors be and the same are hereby dismissed; and it is ordered that the costs of said interventions be paid by said intervenors."

On the 23rd day of February, 1877, the following order was made in the case:

" Upon motion of Armstrong & Hinkson (attorneys for plaintiffs), it is ordered by this Court, that this action be and

the same is hereby continued in the names of W. C. Sheldon, and Joel S. Cotton as executor of the last will and testament of the said Catherine D. Cotton, deceased (formerly Catherine D. Sheldon), against the parties herein before mentioned as the intervenors and defendants; and it is further ordered, that the said plaintiffs may amend their complaint herein, and set up supplemental matter therein, as well as other material matters; and that the plaintiffs may amend the prayer of their answers to the petitions and interventions of the several intervenors."

On the succeeding day, February 24th, the following order was made and entered in the case:

" Upon suggestion of the death of Catherine D. Cotton, it is ordered by the Court, that the action be continued in the name of Joel S. Cotton, the executor of the last will and testament of the said Catherine D. Cotton, and continued with the other plaintiffs; and it is further ordered, that the order herein entered on the 23rd instant is, by consent, set aside."

This was the condition of the case when it was called for trial on the 7th day of April, 1877; and on that day, the following proceedings were had therein:

" A. P. Catlin, attorney for intervenors, stated to the Court that he had received the notice of trial, addressed to him, as the attorney for Acock, Pierce, Richards, Elder, Oatis, and Rhodes, and that he appeared for the purpose of objecting to any proceedings in the case which would affect either of the parties named. He stated, for the information of the Court, the history of the action, and claimed that there was no case for trial before the Court; that the parties intervenors had been upon their own motion dismissed from the case on the 3rd of January, 1877; that, as the interventions of said intervenors had been withdrawn, and as the defendants, the said G. W. Gunn and Catherine F. Mahone, had made default, and their defaults had been entered in 1871, the plaintiffs were entitled to such relief as against said defendants as the facts stated in the complaint warranted, without a trial.

"The attorneys for said intervenors introduced in evidence, from the minutes of the Court, the order of January 3rd, 1877, herein before at large set forth.

"The attorneys for plaintiff proved by competent evidence,

that Catherine D. Cotton, formerly Catherine D. Sheldon, one of the plaintiffs, died on the 16th day of April, 1875;  *  *  * and objected to the introduction in evidence of the order of January 3rd, 1877:

" 1.  Because it appears to have been made after the death of one of the plaintiffs, and before her successor in interest had been made a party to the suit, and is therefore void.

" 2.  Because it is made *ex parte* without any notice to plaintiffs,

" 3.  Because the intervenors having become parties to the suit by previous orders of the court, it is not possible for them to withdraw as parties.

" 4.  Because it does not purport to dismiss them as parties.

" After hearing argument on both sides, the Court ruled, that the intervenors were in Court, and should be so held to be, to which ruling the attorney for said intervenors then and there excepted.

" A judgment was afterwards rendered in the action in favor of the plaintiffs and against the intervenors; and it was thereby ordered, adjudged, and decreed, that upon the presentation of said deed (the deed which the administrators were directed to make to the plaintiffs) so executed to said Thomas L. Acock, C. W. Pierce, John Richards, James A. Elder, Marinda Oatis, and Andrew J. Rhodes, administrator of the estate of John P. Rhodes, deceased, or to the successor in interest in said lands, or either of them, and upon demand by the plaintiffs or their agent or attorneys, the said Acock, Pierce, Richards, Elder, Oatis, and Andrew J. Rhodes, administrator of the estate of John P. Rhodes, deceased, and all persons claiming through or under them, or either of them, or through or under said estates, do yield up and surrender the possession of said lands, and each and every part thereof, and that a writ of restitution be awarded to put the plaintiffs into possession of said land, and each and every part thereof."

From the foregoing judgment, the intervenors have taken this appeal.

The first question presented relates to the right of the intervenors to dismiss their petition of intervention.  It seems that the Court below recognized such right, and its order of January

3rd, 1877, directed the dismissal of such intervention; but after-wards, treating such order as a nullity, the Court proceeded to try and determine the case against the intervenors.

Can an intervenor against whom no relief is prayed (for none was prayed against these intervenors) dismiss his petition of intervention? We are of the opinion that he can. In the case of *Mars* v. *McKay*, 14 Cal. 127, this Court says: "But having filed their intervention and become parties to the suit within the prescribed period of six months, and during the ex-istence of their lien, the effect of their position is precisely the same as if they had commenced an original action." In the case of *The People* v. *Talmage*, 6 Cal. 256, the Court holds, that, "admitting the right of Carothers, the intervenor in this case, his petition must be treated as a declaration or complaint under the statute, and, as such, it is wholly insufficient. The facts set forth therein would be insufficient to constitute a cause of action, either in law or equity." Mr. Pomeroy, in his work on Remedies and Remedial Rights, § 430, says: "The proceed-ing by intervention is not an anomalous one, differing from other judicial controversies, after it had been once commenced. It is, in fact, the grafting of one action upon another, and the trying of the combined issues at one trial, and the determining them by one judgment. * * * The intervenor brings him-self into Court and becomes a litigant party, by filing and serv-ing his petition, which is answered by the adversary parties—plaintiff or defendant, or both—in the same manner as though it was the pleading of the plaintiff; the issues are then framed—issues upon the plaintiff's petition and the intervenor's petition—and the trial of the whole is had at one hearing. If the inter-venor fails on the trial, a judgment for costs is of course rendered against him; if he succeeds, judgment is given in his favor, ac-cording to the facts and circumstances of the case."

We are also of the opinion that the fact of the death of one of the plaintiffs did not take away or in any manner affect this right. As has already been remarked, there was no relief prayed against the intervenors, and they were equally actors in the case with plaintiffs. It was a contest waged against the defendants, and plaintiffs and intervenors were alike endeavor-ing to establish a trust in their favor in the administrators of

the estate of Jared Sheldon. The intervenors had a right to abandon the contest, and this they did, and nothing more, when they dismissed their petition of intervention. (Code Civ. Proc. § 581; *Hancock Ditch Co.* v. *Bradford*, 13 Cal. 637; *Brown* v. *Harter*, 18 id. 76.)

The intervenors were out of the case by virtue of the order of dismissal of January 3rd, 1877, and it follows that the Court erred in trying the case and rendering judgment against them.

Judgment as to intervenors reversed.

THORNTON, J., and ROSS, J., concurred.